JOHN G. RUGE AND GEORGE H. RUGE, INDIVIDUALLY AND AS PARTNERS UNDER THE NAME AND STYLE OF HERMAN RUGE AND SONS, *Appellants*, v. THE WEBB PRESS COMPANY LIMITED, A CORPORATION, *Appellee.*

Opinion filed April 18, 1916.

1. Under Section 2237 General Statutes of Florida, 1906, Compiled Laws of 1914, the landlord's lien provided for in the second subdivision of the section is not superior to a lien acquired by another prior to the bringing of the property upon the leased premises or prior to the commencement of the tenancy under the lease.

2. A written lease of lots which provided that the time should begin to run from a date in the past, executed between the owner of the lots and a tenant subsequently to the bringing upon the lots of personal property which was immediately mortgaged to secure a balance due for its purchase price, will not be given a retroactive effect in order to defeat the superiority of the mortgage lien over that of the landlord.

Appeal from Circuit Court, Franklin County; E. C. Love, Judge.

Decree affirmed.

*Fred T. Myers,* for Appellants;

*R. Don McLeod, Jr.,* for Appellee.

ELLIS, J.—During the year 1911 a corporation was organized at Apalachicola, Florida, to engage in the cotton compress business at that place. Before the organization of the corporation was completed, two of the subscribers for stock were appointed by their associates to

purchase the necessary compress machinery, boilers, etc. This commission was executed by the two representatives of the proposed stockholders of the compress company entering into an agreement with the Webb Press Company, the appellee, for the purchase of the necessary machinery. The contract which was in writing provided that the compress should be erected in Apalachicola and that the amount then remaining due upon the purchase price of the machinery should be evidenced by four notes of twelve hundred and fifty dollars each and payable one each year beginning with May 1, 1912; that said notes should be secured by first mortgage on the entire compress plant of the Apalachicola Compress Company, and the title to the machinery, which was described in the instrument, should remain in the Webb Press Company "until fully settled for as herein provided." This contract was dated July 11th, 1911.

In April, 1911, and before the company was organized, one of the proposed stockholders of the company began negotiations with appellants for a lease upon the wharf lots described in the bill, and it was understood by the appellants that the lease was to be taken in contemplation of erecting upon the lots a cotton compress. The proposition was made to Mr. Henderson, who was one of the proposed stockholders, at the request of Mr. Phillips, another proposed stockholder.

Three of the proposed stockholders of the company, Beverly, Henderson and Phillips, without the knowledge or consent of the appellants, went upon the lots with a force of employees and began excavating for the foundation to be laid for the machinery and had a pile driver at work driving piles. The appellants notified the people at work that Ruge Brothers had not authorized the work, and that the workmen would have to look to the com-

press people for payment for the same. Henderson was notified by one of the appellants, verbally and in writing, to discontinue the work on the property and vacate the same, because the appellants had given Henderson and his associates no authority to undertake any permanent work or exercise right of possession as trustee in behalf of the compress company "until the lease and agreements were perfected." To this notice the represntatives of the proposed stockholders of the company replied that "they would perfect matters at once." But they did not do so, and no other action was taken by Ruge Brothers to dispossess these men who continued their preparations for the foundations for the press machinery and began erecting the same about the latter part of August.

In the meantime the organization of the corporation was progressing, and on December 4th, 1911, the Apalachicola Cotton Compress Company having been duly incorporated, executed and delivered to the Webb Press Company four notes for twelve hundred and fifty dollars each, and to secure the payment of the same executed and delivered to the Webb Press Company a mortgage upon the following property:

"All of the right, title and interest of the party of the first part in and to wharf lot Four (4), Wharf Lot (5) and Wharf Lot Six (6) of said city and Water Street adjacent thereto. Said interest in wharf lots being more specifically described as the North half of Wharf Lot Four (4), all of Wharf Lot Five (5) and the South half of Wharf Lot Six (6) together with all improvements thereon consisting chiefly of one double hydraulic compress, boilers, pumps, and engines, compress sheds, platforms, tools and all fittings and fixtures thereto belonging. The same being the entire compress plant of the Apalachicola Cotton Compress Company in

Apalachicola, Franklin County, Florida, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

The mortgage appears to have been duly acknowledged and was recorded in the public records of Franklin county on December 18, 1911.

On March 11, 1912, the negotiations between the compress company and the appellants for the rental of the wharf lots upon which the compress machinery had been erected, were renewed, and on that date a written contract of lease was executed and delivered between the parties, under the terms of which the lessors let the premises for the term of ten years from the 22nd day of August, 1911, and the lessee agreed to pay to the lessors "an annual rental of $500.00 for the full term of this lease, to be paid in semi-annual payments of $250.00 on the 22nd day of February and the 22nd day of August in each and every year." It was also provided in that instrument that the lessee "its successors and assigns" should have the right to remove from the "said lots hereby leased" within ninety days after the expiration of the lease any buildings, structures, machinery, trade fixtures, equipment and personal property placed thereon by the lessee, its successors and assigns.

The reason given by one of the appellants for making the term of the lease to begin August 22, 1911, was to make it coincident "with the date of a lease obtained from the City of Apalachicola to the Apalachicola Cotton Compress Company which was to be assigned in part to the Ruge Brothers Canning Company." During the taking of testimony one of the appellants upon cross-examination in answer to the following question: "Q. Is

any rent due to you from the Apalachicola Cotton Compress Company for the premises mentioned in your lease accruing prior to the 18th day of December, 1911?" replied as follows: "A. All rent which matured prior to the installment falling due August 22, 1912, has been paid." The rent accruing for the three periods from February 22, 1912, to August 22, 1913, not having been paid, the appellant obtained a judgment against the compress company therefor, which has not been paid. The rent accruing for the three periods from August 22, 1913, to February 22, 1915, is also unpaid.

The Cotton Compress Company having failed to pay to the Webb Press Company two of the notes secured by the mortgage, the latter company on the 8th day of December, 1913, filed its bill in the Circuit Court for Franklin County to foreclose and made the appellants here parties defendant. An order *pro confesso* was taken against the compress company for failure to plead, answer or demur. The appellants answered setting up their claim for rent due under the lease and insisting that the lien therefor was superior to that of the complainant under its mortgage.

The court upon final hearing decreed the amount due under the mortgages and that the lien of the mortgage was superior to the lien of the firm of Ruge and Sons for rent upon the machinery and improvements brought upon the property prior to the execution of the lease. That the lien of Ruge and Sons upon the leasehold interest of the compress company in the lots was superior to the mortgage lien. That the complainants were entitled to a foreclosure of the mortgage, and the compress company was ordered to pay the amount found to be due within a time certain, in default whereof the machinery, consisting of boilers, pumps, engines, also the compress sheds,

platforms, tools and all fittings and fixtures "except the bale hoist," to be sold at public outcry; that at the same time the leasehold interest of the compress company be sold, but separately and apart from the machinery, and subject to the condition that the purchaser take the same subject to the covenants of the lease and to the lien thereon for rent. The proceeds of the sale were required to be applied to the payment of taxes, costs and the amount adjudged to be due complainants for principal, interest and attorneys' fees upon the mortgage indebtedness. From this decree the appellants appealed, and assigned as error the making and entering the decree.

The statute provides that every person to whom rent may be due, shall have a lien for such rent upon the property found upon or off the premises leased or rented and in the possession of any person, as follows:

"1.  Upon agricultural products raised on the land leased or rented for the current year. This lien shall be superior to all other liens, though of older date.

2.  Upon all other property of the lessee or his sublessee or assigns usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of such property on the premises leased.

"3.  Upon all other property of the defendant. This lien shall date from the levy of the distress warrant hereinafter provided for." Sec. 2237 Gen. Stats. of 1906; Compiled Laws of 1914.

The claim of the appellants that their lien was superior to that of the mortgage is based upon the second subdivision of the above quoted statute, and upon the further contention that the leases provided that the "buildings, structures, machinery, trade fixtures or property" should not be removed from the premises until all rents, taxes and other demands agreed to be paid under the

terms of the lease shall have been fully paid and discharged. The lien given by the statute is a charge only upon the property of the tenant; but as the machinery described was not the property of the tenant at the time it was placed upon the lots, it follows that no lien attached to it until the relation of landlord and tenant existed between the owners of the lots and the owners of the machinery or their assigns.

The Webb Press Company retained the title to the machinery until the execution of the mortgage by the Compress Company on December 4, 1911. At that time the relation of landlord and tenant did not exist between the appellants and the compress company under such a contract as would support an action for rent. Archibald's Nisi Prius, 58. If the appellants had any claim against that company for its occupancy of the lots, it was a claim not for rent, because there was no contract between the parties for the payment of money or other things for the use of the lots, nor for any definite term of occupation; but the claim was for such sum as the use of the lots was really worth upon the implied contract to pay such sum. The appellants' action would have been for use and occupation. Brolasky v. Ferguson, 48 Pa. St. 434; Patterson v. Stoddard, 47 Me. 355; Porter v. Hooper, 11 Me. 170; Kirchgassner v. Rodick, 170 Mass. 543, 49 N. E. Rep. 1015; Stewart v. Fitch, 31 N. J. L. 17; Ward v. Bull, 1 Fla. 271.

The most favorable view that may be taken of the evidence from the appellants' standpoint is, that the occupation of the lots by the compress company during the year 1911 and to the date of the lease, was with the consent of the appellants and under an implied contract to pay such sum as such use was reasonably worth. Section 2237 distinguishes between the words leased and

rented. Subdivision one provides for a lien upon the products raised upon the land leased or rented, while subdivision two provides that upon all other property usually kept upon the premises the lien shall be superior to other lien only when such other liens are acquired "subsequent" to the bringing of such property on the premises *leased*. The premises in this case were not leased until after the machinery was brought on the premises, and the mortgage lien of the Webb Press Company had attached. The lease made and executed by the appellants on March 11, 1912, to the Cotton Compress Company was for a term of ten years, and was required by the statute to be in writing, signed, sealed and delivered in the presence of at least two subscribing witnesses by the party creating, making or granting the estate. Sec. 2448 Gen. Stats. of 1906, Compiled Laws 1914; King v. State, 43 Fla. 211, 31 South. Rep. 254; Graves v. J. M. Harris & Bro., 63 Fla. 169, 58 South. Rep. 236. To give it a retroactive effect as against the mortgagee would be to defeat the purpose of Section 2237 General Statutes, and enable the landlord with the aid of his tenant to acquire an inequitable advantage over the vendor of the machinery who had diligently and lawfully taken all the necessary precautions to secure the payment of the balance due for the purchase money of the machinery sold by it. The case of Webb v. Sharp, 13 Wall. (U. S.) 14, cited by counsel for appellants does not apply because in that case the mortgage was made by the lessees to Webb upon the press after the lease of the premises had been made to Snow and his associates and they had entered upon the leased premises and placed the press thereon. In the case of Beall v. White, 94 U. S. 382, the same Act of Congress prescribing liens in favor of landlords upon the personal chattels of their tenants was con-

sidered, but in that case also as in Webb v. Sharp, the lessees entered into possession of the premises and *after* the commencement of the lease, executed a deed of trust upon their furniture to secure a debt evidenced by notes to one other than the landlord. The court held that the lien for rent was superior. Said the court: "Liens of the kind arising under the Act of Congress attach at the commencement of the tenancy, or whenever personal chattels, owned by the tenant and subject to execution for debt, are brought on to the premises." Under our statute, however, the landlord's lien is not superior to a lien acquired by another prior to the bringing of the property upon the leased premises, or prior to the commencement of the tenancy under the lease.

It is contended that the court erred in ordering the machinery, tools, press, boilers, engines, press sheds, platforms, etc., to be sold separately from the leasehold interest of the cotton compress company in and to the lots. On the date the mortgage was executed the compress company had no right, title or interest in and to the wharf lots, under any lease from the owners. If any such interest was acquired afterwards and became subject to the mortgage, the mortgagee's rights would be secondary to that of the landlord, and he cannot complain that his superior right in regard thereto was preserved by the decree. The contract between vendor and vendee, the mortgage and the indenture of lease all show a clear intention of the parties interested to deal with the machinery and sheds as personal property. The decree so interprets the intention of the parties, and, as we think, correctly.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.

The decree is, therefore, affirmed.