LEON S. MEYERS AND W. J. FRANCIS, COPARTNERS DOING BUSINESS AS LEON S. MEYERS & COMPANY, *Plaintiff in Error*, v. LULA FERRIS, AS ADMINISTRATRIX OF THE ESTATE OF DON FERRIS, DECEASED, *Defendant in Error*.

Division B.

Opinion filed May 20, 1926.

Petition for rehearing denied July 8, 1926.

*G. A. Worley & Son,* for Plaintiffs in Error;

*Bart A. Riley,* for Defendants in Error.

BUFORD, J.—An action for conversion of certain jewelry was brought in the Circuit Court of Dade County, Florida, against Leon S. Meyers and W. J. Francis, copartners doing business as Leon S. Meyers & Company, by Lula Ferris as administratrix of the estate of Don Ferris, deceased.

The amended declaration was in the following language:

"The plaintiff, Lula Ferris, as administratrix of the estate of Don Ferris, deceased, by her attorneys, sues the defendants, Leon S. Myers and W. J. Francis, co-partners doing business as Leon S. Myers & Company, for that the defendants, on to-wit; the 15th day of November, A. D. 1921, converted to his own use or wrongfully deprived the plaintiff of the use and possession of the plaintiff's goods, that is to say: Certain property belonging to Don Ferris in his life time, to-wit:

"One diamond scarf pin,
One gold watch set with a diamond,
One gold watch chain,
One gold cigar clipper,
One diamond ring mounted in platinum (three diamonds and two blue stones);

One Elk Head belt buckle set with small diamond and ruby,

One gold Elk card case

of the aggregate value of $8,000.00.

"WHEREFORE, Plaintiff brings this her suit, and claims damages in the sum of $8,000.00."

The amended declaration clearly states that the plaintiff sues in her character as administratrix of the estate of Don Ferris. The evidence shows that she claims only in her right as administratrix of the estate.

As shown by the declaration the value of the goods was alleged to have been $8,000.00.

The verdict was in favor of the plaintiff in the sum of $2,000.00, for which judgment was rendered and the same is now on writ of error in this court.

There are twenty-seven (27) assignments of error; it will only be necessary to consider the assignment of error No. 23 which is as follows:

"The defendants assign as error the actions and rulings of the court in overruling the defendants' motion for a directed verdict, on the grounds stated in the motion when the plaintiff rested the second time."

The request for a directed verdict is upon the theory that the evidence introduced by the plaintiff in the court below failed to show that the plaintiff was entitled in her capacity as administratrix to the immediate possession of the property at the time and place of the alleged conversion.

The evidence only shows that the administratrix was qualified under the laws of the State of Florida. Assets beyond the territorial limits of this State were not subject to her demand. In R. C. L., volume 11, page 432, Section 532, we find the following expression of the law in this regard in the following language:

"It is an elementary principle that letters testamentary or of administration have no legal force or effect beyond the territorial limits of the state in which they are granted. Whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to it own institutions and interests of its own citizens. Yet a title acquired through foreign administration is universally respected by comity of nations. The comity, however, does not extend so far as to permit a foreign representative to take possession of and remove assets beyond the jurisdiction of the state, when such removal may be prejudicial to creditors who are citizens of the state. Under this principle a grant of administration in England will not extend to the colonies, and an administrator appointed in a foreign country has no authority in the United States; also letters of administration granted in one of the states are of no authority in another. This limitation of authority was derived by analogy to the practice of the ecclesiastical courts wherein the jurisdiction of the ordinary was bounded by the confines of the diocese, and having no authority beyond such limits, he could confer none. Since courts have no jurisdiction over assets of a decedent in a foreign sovereignty, an executor or administrator deriving authority from them has no right to go into such foreign territory and exercise his official functions over property there. This theory of administration is purely representative and exists only by force of the official character and so cannot pass

beyond the jurisdiction which grants it, is gen-
erally accepted. If an executor or administrator
is permitted to exercise any control over prop-
erty beyond such jurisdiction, or to make any
disposition of it there, the authority to do so must
come from the statutes of the foreign jurisdiction,
or it must be permitted of mere comity. Even an
administrator with the will annexed cannot inter-
meddle with the effects of the testator in another
state unless permitted to do so by its laws. Al-
though a testator devises his property to his execu-
tors named in his will, to be held in trust as there-
in specified, this does not authorize them to ad-
minister the trust as to property situate in another
state in any other way or manner than subject to
its laws.''

There are numerous cases cited in the notes under this
text which amply support the theory of the law as stated.

The evidence shows conclusively that there were creditors
in the state of New York to whom the estate of Don Ferris
was indebted in large sums of money and before the ad-
ministratrix of the estate would be vested with the right
to require delivery of the property of the estate located in
the State of New York, it would be necessary for her to
show that she had complied with the statutes of that state
in such a manner as to give her such right of possession.

Maas vs. German Saving Bank, 176 N. Y. 377,
68 North Eastern 658,

In re Fitch 160 N. Y. 87, 54 North Eastern 701,

24 Corpus Juris 1129, *et seq.*, and cases there cited.

In the case of the matter of James D. Prout, 128 N. Y.
Page 70, Section 2699 of the Code of Civil Procedure of
the State of New York is construed and the statute is
quoted in part as follows: ''Upon the return of the cita-

tion, the surrogate must ascertain, as nearly as he can do so, the amount of debts due, or claimed to be due, from the decedent to residents of the state. Before ancillary letters are issued, the person to whom they are awarded must qualify, as prescribed in article fourth of this title, for the qualification of an administrator upon the estate of an intestate; except that the penalty of the bond may, in the discretion of the surrogate, be in such sum, not exceeding twice the amount which appears to be due from the decedent to residents of the state, as will, in the surrogate's opinion, effectually secure the payment of those debts; or the sums which the resident creditors will be entitled to receive, from the persons to whom the letters are issued, upon accounting and distribution, either within the state or within the jurisdiction where the principal letters were issued.''

In trover it is not only necessary that the plaintiff have title to or right of property in the chattel which is the subject of the suit, but this must be united either with proof of possession or of right of immediate possession.

Forth vs. Pursley, 82 Ill. 152,
Raymony Syndicate vs. Guttentag, 177 Mass 562, 59 North Western 446.

The evidence does not show that the plaintiff was ever in possession of the property, neither does the evidence show that she, as administratrix of the estate of Don Ferris, deceased, had placed herself in a legal position to be entitled to enforce delivery to her and that she therefore had the right of possession of the property described in the declaration, which is shown to have been situated in the State of New York at the time of the alleged conversion, in the face of the fact that the estate of which she was administratrix had large creditors in the state of New York.

Vaughan vs. Northrup, U. S. 15 Pet. 1, 10 Law Edition 639,

Volunteers of America vs. Pierce, 276 Ill. 406,

Parsons vs. Lyman, 20 N. Y. 103,

Compton vs. Boreland Coal Co., 179 Ky. 695, 201 South Western 20,

Wirgman vs. Probable Life Insurance Co., 79 West Va. 562, 92 South Eastern 415.

This being the status of the matter as shown at the conclusion of the plaintiff's testimony the defendants were then entitled to the benefit of an instructed verdict in their favor.

The judgment is reversed.

Reversed.

WHITFIELD, P. J. AND TERRELL, J., concur;

STRUM, J., concurs in the opinion;

BROWN, C. J. AND ELLIS, J., dissent.

BROWN, C. J., dissenting.—Conceding the general rule to be, in actions of trover, that the plaintiff must have had the right of possession at the time of the alleged conversion, and that the action must be governed by the law which was in force at the time and place of the conversion, which was in New York, and conceding also that the plaintiff could not have enforced by suit in New York, her right of possession, except by mere comity, or by the consent of the parties, without first having taken out ancillary letters of administration in that state, the question still remains whether or not the plaintiff had the *right to possession* in New York of the property converted. She may have had this right without having the right to sue there. If she had this

right, and the property was converted, and the party guilty of conversion comes within the jurisdiction where the letters of administration were granted, and personal service can be obtained upon him, surely the administratrix would have the right to sue in trover, which is a transitory action, for the recovery of the value of the property of the estate so converted. In fact, it would become the duty of the administratrix to bring such suit.

The doctrine that letters testamentary or of administration have no operation or effect outside the state or country in which they are granted, does not go to the extent of restricting the authority of a domiciliary representative absolutely to the jurisdiction of the domicile. He may sue in the courts of another state if permitted by the statutes of that state to do so. as is the case in Florida, or he may do so, in the absence of such statutes, if no objection is made by the defendant to his maintenance of the action. So, too, he may, and should, collect assets in a foreign jurisdiction, if payment or delivery is made to him voluntarily, so that resort to the local courts is not necessary. 13 Am. & Eng. Encyc. of Law, 2nd. Ed., pages 918, 945-947; 3rd Schouler on Exec. & Admin., page 2014. In the authority last cited, it is said: ''It is held in several American cases, consistently with this rule, that, no conflicting grant of authority appearing, the domicilary appointee of another state may take charge of and control personal property of the deceased in the state of its situs.'' Citing Parsons v. Lyman, 20 N. Y. 103; Vroom v. Vanhorn, 10 Paige (N. Y.) 549, 42 Am. Dec. 94.

It is a general rule that the situs of personal property is the domicile of the decedent (Schouler on Exec. & Admin., sec. 793), though this rule might not displace the rule in actions of trover, above referred to, that the law

of the time and place of the conversion controls the right to recover in such action.

"The rule that a foreign representative has no standing in court to sue for the recovery of debts due or on any cause of action belonging to the decedent unless thereto authorized by local statutes, is considered in another part of this article. But it does not follow from this rule that he is in no case concerned with or possessed of authority in respect to assets beyond the jurisdiction of the courts of the state or country in which he was appointed. As the personal representative of the decedent, deriving his authority from the laws of the decedent's domicile, he is invested with the title to all the personal estate, wherever it may be locally situate; and though he may be disqualified from suing in a foreign jurisdiction, there are several ways in which he may get in foreign assets without the aid of the foreign courts. Thus it is held by an almost unbroken line of authorities that he may receive voluntary payment from a foreign debtor, and give a valid acquittance, if ancillary letters have not been granted by the probate court of the foreign debtor's residence; and as incidental to his authority to receive such voluntary payments he may satisfy and release mortgages of land in foreign jurisdictions. * * * The domiciliary representatives may also take peaceable possession of any personal property in a foreign jurisdiction, if he can do so without suit; and if a foreign debtor comes into the jurisdiction of the domiciliary representative, or own property therein, the domiciliary representative may sue him there, notwithstanding the liability which may attach in consequence of an ancillary administration in the jurisdiction of the debtor's residence. Not only has an executor or administrator the power in certain cases to collect debts due from foreign debtors, but it is also held to be his duty to the extent of his conscious ability,

to do so, and the court of the domicile may compel him to account for willful neglect to perform that duty; and he will be allowed the expense of a *bona fide* but unsuccessful attempt to make the collection." 13 Am. & Eng. Encyc. of Law, pages 932-934; 11 R. C. L., pages 152, 433, 437; 24 C. J. pages 1118 to 1121.

It would appear in this case that the administratrix appointed by the Florida court, there being no ancillary letters of administration in New York, had the legal title and the right of possession which ordinarily goes with it, and while possibly not having the right to remove, as against local creditors, the property from the state of New York without taking out ancillary letters, it might be well that she had, as against a wrongdoer, who took possession of and converted the property without authority, such right of possession as would give her the right to sue in trover such person who wrongfully took possession of and converted the property, by a suit in the jurisdiction of her appointment when such person was found there, and therefore subject to the personal service of process, in this, a transitory action. It is exceedingly doubtful that such a tort-feasor has any standing in court to assert that the administratrix had no right of possession in New York, by reason of not having taken out ancillary letters there, and that he, the tort-feasor, could, therefore, take possession of and convert the property with impunity. If ancillary letters had been granted to some other person than the plaintiff below in the State of New York at the time of the conversion, a different question might arise from the one here presented.

Nor can it be said that the administratrix has no right of action for conversion of personal assets of the estate between the time of the death of plaintiff's intestate and the granting of letters of administration. It would be

monstrous to hold that nobody has a right of property in the personal assets of a decedent until letters testamentary are granted, for to so hold would be to place such property at the mercy of all comers, whether creditors scrambling for the collection of their debts or mere vandals taking advantage of the unprotected situation of the assets. So it must needs be that the right of the personal representative when appointed relates back to the time of the death of the decedent, and confers a right of action, either to recover actual possession of property of the estate taken before his appointment or to recover damages for the conversion of such propery; just as the personal representative has the right to recover property fraudulently taken from the intestate during his lifetime, as well as to enforce all debts due him at the time of his death.

"It is well settled that the title of the administrator to the property of his intestate relates back and takes effect from the time of the death of the decedent, legalizing all acts otherwise valid done by the administrator before his appointment, and vesting in him causes of action accruing between the granting of letters and the death of the intestate." 11 Am. & Eng. Encyc. of Law, 2nd Ed., pages 908 and 909, and cases cited; Vroom v. Horne, 42 Am. Dec. 94; Wonson v. Sayward, 23 Am. Dec. 691; Babcock v. Booth, 38 Am. Dec. 578. In Tharp v. Stallwood, 44 E. C. L. 397, it was said by Tindal, C. J., "It would be strange indeed of an administrator might sue for a trespass committed in the lifetime of his intestate, and for one committed after the granting of letters of administration, but not for one committed in the intermediate time."

Suppose, for the purpose of illustration, a farmer living in Florida also had a farm in Georgia, and after his death, some person should take possession and convert to his own use the farming utensils, cattle and other stock found on

the farm in Georgia, and subsequently, when an administrator had been appointed in Florida, the person guilty of the conversion should come within the jurisdiction of the appointment, in Florida, could it be said that the Florida administrator could not bring suit against such person in trover for the damages occasioned to such estate? We do not think so. The law contemplates no wrong without a remedy, and what remedy would be more appropriate than an action by the administrator in trover against the wrong-does when found within the jurisdiction of his appointment? Nor would this conclusion be different if the law of Georgia prevented the Florida administrator from bringing suit in Georgia to recover possession of the assets of the estate unless he first obtained letters of administration in Georgia.

I have, for the reasons above pointed out, reached the conclusion that this case should not be reversed for the reasons set forth in the majority opinion.

ELLIS, J., concurs.