464 So.2d 597 (1985)
Ira SACHS, Appellant,
v.
CURRY-THOMAS HARDWARE, INCORPORATED, Appellee.
No. AV-45.
District Court of Appeal of Florida, First District.
February 20, 1985.
Rehearing Denied March 21, 1985.
*598 M.W. Goldstein of Goldstein & Goldstein, Jacksonville, for appellant.
Paul M. Harden of Smith, Davenport, Bloom & Harden, Jacksonville, for appellee.
SMITH, Judge.
Sachs appeals a final summary judgment of foreclosure rendered in favor of appellee Curry-Thomas Hardware ("Curry-Thomas"). Sachs contends that the trial judge erred in finding that a landlord's lien asserted by Curry-Thomas, pursuant to Section 83.08, Florida Statutes (1983), was superior to a purchase money security lien asserted by Sachs in certain personal property located on real property owned by Curry-Thomas. We affirm.
In 1981, Sachs leased the property in question from Curry-Thomas. Subsequently, he placed various equipment and appliances on the premises, ostensibly in connection with the commencement of a restaurant business. Sachs then sold this business to a Mrs. Tyers. As a result, Curry-Thomas cancelled its lease to Sachs and re-leased the property to Mrs. Tyers. She then sold the equipment to a Mr. Abraham sometime in 1982. As before, Curry-Thomas cancelled its lease with the vacating tenant, Mrs. Tyers, and signed a new lease with Abraham. However, Abraham proceeded to abandon the property. During the time in question, Sachs had maintained his ownership interest in the equipment he had brought onto the property. Consequently, after Abraham abandoned the property, Sachs successfully "repossessed" the equipment, though in a technical sense only, since the equipment remained on the leased premises.
Sachs then resold the "business," which had yet to begin operations, to a Mr. and Mrs. Barnes, in December 1982. As partial payment, the Barneses gave Sachs a promissory note for $24,500, secured by a purchase money security agreement covering the business equipment. Sachs formally secured his purchase money lien on the equipment by recording the line with the Clerk of Circuit Court of Duval County on December 21, 1982. He also filed a Uniform Commercial Code filing notice with the Florida Secretary of State on December 23, 1982, in an effort to further secure his lien.
*599 Meanwhile, Curry-Thomas cancelled its lease with Abraham, and signed a new lease with Mr. Barnes on January 8, 1983, effective from January 1, 1983. Barnes proved no more reliable than Curry-Thomas' previous tenants, defaulting after his February 1983 rental payment. After some fruitless discussions between Sachs and Curry-Thomas regarding a renewal of their landlord-tenant relationship, Sachs demanded that Curry-Thomas allow him to repossess the personalty under his security agreement with the Barneses, and with their consent. Curry-Thomas refused to allow Sachs to reclaim the property, instead instituting this foreclosure proceeding in the circuit court, naming Sachs and Barnes as party-defendants.[1]
Curry-Thomas asserted a landlord's lien against the personal property on the leased premises, including the equipment and appliances, pursuant to Section 83.08(2), Florida Statutes. Sachs defended, claiming that his "secured" lien on the personalty took priority over Curry-Thomas' asserted lien on the same property. Sachs also counterclaimed, contending that Curry-Thomas converted Sachs' personalty by refusing to allow him to repossess it under his security agreement with the Barneses. After both parties moved for summary judgment, the trial judge denied Sachs' motion, but granted Curry-Thomas' motion, citing Section 83.08, Florida Statutes, and G.M.C.A. Corporation v. Noni, Inc., 227 So.2d 891 (Fla. 3d DCA 1969).
Sachs relies for reversal upon his assertion that at the time he allegedly perfected his lien on the equipment and appliances, no lease agreement existed between Curry-Thomas and Barnes covering the property upon which the personalty was located. Sachs points out that while he formally secured his lien on December 21 and 23, 1982, by filing notice of the lien with the Clerk of the Circuit Court for Duval County as well as the Secretary of State, the lease between Barnes and Curry-Thomas was not signed until January 8, 1983, and was effective, at the earliest, on January 1, 1983. Sachs further urges that while Section 83.08(2) provides that a landlord's lien is superior to all liens acquired after property to which the lien attaches is brought onto the leased premises,[2] the case law interpreting Section 83.08 and its predecessors requires the commencement of a tenancy before the landlord's lien will have its statutorily-mandated priority. Waldo v. United States Ramie Corp., 74 So.2d 106 (Fla. 1954); Cabre v. Brown, 355 So.2d 846 (Fla. 1st DCA 1978). Here, Sachs contends, no lease had been consummated between Curry-Thomas and Barnes until after Sachs acquired his lien on the equipment. Thus, he contends, since no tenancy had commenced prior to the acquisition of the lien he asserts, the priority granted to Curry-Thomas' landlord's lien by Section 83.08(2) is inapplicable, citing Ruge v. Webb Press Co., 71 Fla. 536, 71 So. 627 (1916). While we agree with Sachs' statement of the law, we disagree with the application of that law to these facts.
In Ruge, a landlord attempted to enforce a landlord's lien upon a cotton compress machine constructed on land owned by Ruge by a putative tenant, Cotton Compress Corporation (Cotton Compress), prior to the establishment of a landlord-tenant relationship between the parties. The compress' various components were owned by Webb Press Company, which held a chattel mortgage on the compress given by Cotton Compress prior to the execution of any lease between Ruge and Cotton Compress. Upon default by Cotton Compress on its *600 chattel mortgage and rental obligations, both Ruge and Webb Press Company claimed priority with respect to their respective claims to the compress machinery. The Florida Supreme Court held that Ruge failed to establish its statutory entitlement to a landlord's lien on the compress machinery (under a predecessor statute to Section 83.08(2)) because no lease was in existence at the time the chattel mortgage lien in favor of Webb Press Company was perfected. As the court pointed out, Ruge would not have been able to sue anyone for unpaid rent at the time the machinery was placed on Ruge's property. Accordingly, Ruge's purported landlord's lien was held inferior to the chattel mortgage of Webb Press Company.
Here, on the other hand, there existed at all times material to this cause a tenancy based on a lease, under which Curry-Thomas could have initiated an action for unpaid rent. The initial lease was between Sachs and Curry-Thomas. At this time, pursuant to Section 83.08(2), Florida Statutes (1981), a landlord's lien in favor of Curry-Thomas attached to all property of Sachs, including the restaurant equipment and appliances "usually kept on the premises." Since Sachs' security interest was not perfected prior to the commencement of the tenancy under the lease between Sachs and Curry-Thomas or the placement of the personalty on the leased premises, nothing prevented Curry-Thomas' landlord's lien from being superior to any security interest subsequently acquired by Sachs. Ruge, supra, 71 So. at 629; McKesson & Robbins, Inc. v. Taft Street Shopping Center, 184 So.2d 210, 212 (Fla. 2d DCA 1966). When Sachs subsequently sold the ongoing business, including the equipment, to Tyers, Sachs could not convey to Tyers an interest in the personalty free and clear of Curry-Thomas' right to its landlord's lien, absent proof either that Curry-Thomas acquiesced in the sale intending to waive its lien, or that Tyers was induced to make the purchase based on such a waiver. 52 C.J.S., Landlord and Tenant, § 656(D) (1968).
Although the facts of this case are somewhat unique, we conclude that the personalty on the leased premises remained subject to Curry-Thomas' landlord's lien throughout the succession of transfers that followed. Thus, when Sachs repossessed the equipment upon Abraham's default on his lease from Curry-Thomas, the equipment remained on the leased premises, and continued to be subject to the landlord's superior lien. When Sachs sold the business to the Barneses, he could only convey property already subject, because of the landlord-tenant relationship between Curry-Thomas and Abraham, to a landlord's lien, since the priority of the landlord's lien dates from the commencement of a tenancy, even where the rent default occurs after an intervening lien has been perfected. United States v. S.K.A. Associates, Inc., 600 F.2d 513, 515 (5th Cir.1979), citing Lovett v. Lee, 141 Fla. 395, 193 So. 538, 542 (1940). Accordingly, Sachs' "security interest," acquired in his dealings with the Barneses, was in property which was already subject, by operation of statute, to Curry-Thomas' superior lien. That lien was, in fact, a matured lien, since all rent under the Abraham lease, as Sachs admits, was not fully paid. By the time Sachs sold the business to the Barneses, the landlord's lien on the property had already attached and remained viable. This is so because the legal relationship between Abraham and Curry-Thomas continued until Curry-Thomas cancelled Abraham's lease, and leased the premises to Barnes.[3] Furthermore, the fact that Curry-Thomas cancelled the Abraham lease and later re-leased the property to Barnes does not alter Curry-Thomas' priority as a lienholder. This was a mere substitution of tenants, which could not obliterate Curry-Thomas' superior landlord's lien on the personal property which was then and at all material times had been located on the leased premises. The record is devoid of any evidence that Curry-Thomas *601 agreed to subordinate its lien to that of Sachs. Geiger Mutual Agency, Inc. v. Wright, 233 So.2d 444 (Fla. 4th DCA 1970); G.M.C.A. Corporation v. Noni, Inc., 227 So.2d 891, 892 (Fla. 3d DCA 1969) (citations omitted).[4] To adopt the position urged by Sachs on this appeal would place a landlord, who allowed personalty and fixtures to be placed on his premises, in the posture of having to search various official records for intervening perfected liens before releasing the property to another tenant following rental defaults by an existing tenant. We do not believe that such a result can be supported under a plain reading of Section 83.08(2). Accordingly, we affirm the judgment below.[5]
AFFIRMED.
MILLS and NIMMONS, JJ., concur.
NOTES
[1] Mr. Barnes, in the meantime, had since disappeared, and failed to defend the foreclosure action, whereupon a default was entered against him.
[2] Section 83.08 provides in pertinent part:

Landlord's lien for rent  Every person to whom rent may be due ... shall have a lien for such rent upon the property found upon or off the premises leased or rented, and in the possession of any person, as follows:
* * * * * *
(2) Upon all other property of the lessee or his sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of the property on the premises leased.
[3] There is nothing in the record below to indicate that Curry-Thomas could not have enforced its superior claim for any unpaid rent due from Abraham before it cancelled his lease.
[4] No evidence was introduced below showing that Curry-Thomas was even aware of the existence of Sachs' purported "lien" on the fixtures.
[5] Both parties agree that Sachs' conversion claim is controlled by our disposition of his priority claim. Since Sachs had no legally superior lien claim, Curry-Thomas engaged in no conversion in its refusal to allow Sachs to repossess the property in question. Meyers v. Ferris, 91 Fla. 958, 109 So. 209 (1926); Seiff v. Presto Brick Machine Corp., 168 So.2d 700 (Fla. 3d DCA 1964).