## L. TENNEY PECK *v.* CHARLOTTE D. I. STEERE.

### No. 979.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

HON. C. W. ASHFORD, JUDGE.

SUBMITTED NOVEMBER 27, 1916.          DECIDED DECEMBER 12, 1916

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

EJECTMENT—*estoppel.*

> In ejectment by the second assignee of a lease the plaintiff is estopped by the oral promise of his assignor to the lessor, in consideration of the latter's necessary consent to the assignment, to take only a part of the leased premises, where, pursuant to such promise the consent was given and the part relinquished leased to the defendant.

ESTOPPEL—*landlord and tenant—parol agreement.*

> W desired to procure the assignment of a lease; the written consent of the lessors was necessary to the assignment; W agreed with the lessors in advance that if they would consent to the assignment he would take the leased premises less a certain portion; the lessors consented in writing and the lease was assigned

to W; the boundaries were changed so as to exclude the portion agreed to be relinquished, and lessors leased such portion to the defendant; W assigned, with the written consent of the lessors, the lease assigned to him by B, to the plaintiff; the defendant, prior to commencement of action in ejectment by plaintiff, had fenced the portion which W agreed to relinquish. Held: W's promise estopped him from claiming the land in controversy, and that plaintiff is in no better position than was his assignor.

EVIDENCE—*proving matter in estoppel by parol.*

Parol evidence is admissible to establish acts and declarations made by a party under such circumstances as will in equity estop him from denying such acts and declarations.

OPINION OF THE COURT BY QUARLES, J.

This is an action of ejectment tried in the circuit court of the first circuit, jury waived, the decision and judgment being in favor of the defendant. The facts may be briefly summarized as follows: The plaintiff claims a tract of land designated as lot B at Kahala, leased by L. G. Blackman and James W. Pratt to A. M. Brown, assigned by Brown to W. C. Wilder, and assigned by Wilder to the plaintiff. The defendant claims an adjoining tract designated as lot A, together with a triangle out of the southeast corner of lot B, said triangle designated by lines and corners on a plat annexed to the plaintiff's complaint by the letters "C," "D" and "E." The lease to Brown is dated June 14, 1910, and was recorded in the registrar's office June 30, 1910, and by its terms is not assignable without the written consent of the lessors. The latter part of September, 1910, Mr. Wilder was negotiating with the lessors for their consent to an assignment of the lease by Mr. Brown to him, and at the same time the defendant was negotiating with Blackman and Pratt for a lease of the land covered by lot A and the said triangle out of lot B. The lessors, through Mr. Pratt, agreed with Mr. Wilder that if he would take the land covered by the lease to Brown, less the triangle

in dispute, the lessors would consent to the assignment by Mr. Brown, and to this Mr. Wilder agreed. September 30, 1910, the lessors assented in writing to the assignment by Mr. Brown to Mr. Wilder and the assignment was then made. The following day the lessors made a lease to the defendant of the said lot A, including the triangular piece out of lot B, which is in controversy here, and which lease was later acknowledged and thereafter, on January 20, 1911, was recorded in the office of the registrar of conveyances. Prior to the assignment to Mr. Wilder the boundary monument marking the southwest corner of lot B was moved from point "C" to point "D" whereby the triangle in dispute was taken out of the external boundaries of lot B, as marked on the ground, and embraced within the boundaries of lot A, as marked upon the ground. Prior to the institution of this suit the defendant constructed a stone wall inclosing the land covered by the triangle in dispute and was in actual possession of the same at the commencement of this action, claiming it under the lease to her. Still later Mr. Wilder desired to sell his interest in the lease assigned to him by Mr. Brown, and Mr. Pratt, one of the lessors, acted as his broker and negotiated a sale to the plaintiff. Mr. Pratt testified, and the trial court so found, that he pointed out on the ground to the plaintiff the boundaries of the land that he would get under the assignment of the lease by Mr. Wilder if he should take it over, and that in doing so the triangle in dispute was left out. Mr. Peck controverted this in part and corroborated it in part. Under the negotiations between Mr. Pratt and the plaintiff the latter took an assignment from Mr. Wilder of the Brown lease. The consideration of Mr. Wilder's agreeing to take the land under the Brown lease, less the triangle in controversy, as found by the trial court, was the written consent of the lessors to the assignment from Mr. Brown to him.

The plaintiff objected to the introduction of evidence showing that Mr. Wilder agreed to take the land less the triangle in dispute; to evidence showing the changing of the boundary monuments; and to evidence showing that the boundaries were pointed out to the plaintiff on the ground, for the reason that all of said evidence was incompetent in that it was an attempt to prove an oral surrender which is void under the statute of frauds, on the ground that it was an attempt to vary the terms of a written agreement by parol evidence, and on the further ground that there was not, in law or in fact, a release of the land covered by the triangle in dispute by Mr. Wilder, but only his agreement in advance so to do. All of these objections were overruled by the trial court, which found the facts substantially as above stated, and held under the circumstances proven that the assignment of the Brown lease to the plaintiff with the written consent of Blackman and Pratt, and the lease from Blackman and Pratt to the defendant, were interdependent and correlated acts; that the plaintiff is in no better position than was his assignor Wilder; that the plaintiff had actual and constructive notice of the conditions existing when he took the assignment of the Brown lease and is estopped from claiming the triangle in dispute. The findings of the trial court being upon conflicting evidence, and there being evidence to sustain the findings, they are binding upon this court.

The exceptions before us are to the admission of the evidence objected to, to the decision of the court in favor of the defendant, and to the denial of a motion for new trial by the plaintiff. A correct answer to the questions involved by the various exceptions depends upon the determination of the contention of the plaintiff that under the facts proven and found by the trial court the lease under which the plaintiff claims covers all of the land therein described; that such lease was not affected by the transactions between

the lessors and his assignor Wilder or by the lease to the defendant, the attempt to orally surrender the lease being within the statute of frauds and void. To sustain this contention the plaintiff cites the following authorities: *Kamauleule v. Nagamoto,* 9 Haw. 384; 24 Cyc. 1366; 20 Cyc. 218, 219; Taylor's Landlord and Tenant (8th ed.), Sec. 509, and Washburn on Real Property (5th ed.), 579.

In the case in 9 Haw., cited above, it is held that to constitute a surrender of a lease by operation of law there must be a change of possession by consent of the parties inconsistent with the continued existence of the lease, "as where the tenant accepts from his landlord a new lease inconsistent with the old, or where the landlord accepts a new tenant with the consent of the old, or where by mutual consent the tenant yields and the landlord resumes possession." In 24 Cyc., at page 1366, it is said: "A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by mutual agreement between the parties. The rescission of a lease, when by express words, is called an express surrender or a surrender in fact; and when by acts so irreconcilable to a continuance of the tenure as to imply the same thing it is called a surrender by operation of law. * * * An express surrender, sometimes called a surrender in fact, as distinguished from a surrender by operation of law, is usually required to be in writing. No particular form of words is necessary, nor is it required that there should be a formal delivery or cancellation of the deed or instrument which created the estate to be surrendered. All that is necessary is the agreement of the proper-parties manifesting such an intent followed by a yielding up of possession to the lessor. There must, however, be a consideration for the surrender." In 20 Cyc. 218, 219, it is said: "In jurisdictions where the English statute is followed an oral surrender of any lease is inoperative."

In Taylor's Landlord and Tenant, Sec. 509, the learned author lays down the rule that the surrender to be effective *per se* must be in writing, but, in closing the section, says: "But an unconditional agreement between a landlord and a third person with the assent of the tenant, during the term, to rent the premises to such third person, followed by a change of possession and the payment of rent by the new tenant, will amount to a valid surrender of the old lease, and an acceptance thereof on the part of the landlord." In Ch. X, Sec. 7, Washburn on Real Property (5 ed.), beginning at page 579, the author, upon both English and American authority, considers the question of a surrender of a lease in the same view as the authorities hereinbefore cited. At page 585 he cites from Parke, B., in *Lyon* v. *Reed,* 13 M. & W. 306, as to what constitutes a surrender by operation of law, as follows: "We must consider what is meant by a surrender by operation of law. This term is applied to cases where the owner of a particular estate has been a party to some act, the validity of which he is, by law, afterwards estopped from disputing, and which would not be valid if his particular estate had continued to exist. There the law treats the doing of such act as amounting to a surrender." In *Dennis* v. *Miller,* 68 N. J. L. 320, the court, speaking of an oral agreement to surrender, said: "While executory only, the agreement of surrender was, of course, not enforceable, but when executed it became legally effective." In *Goldsmith* v. *Darling,* 92 Wis. 363, the court, *inter alia,* said: "The learned counsel for appellants are in error in respect to proving by parol the surrender of a written lease. The rule of law invoked does not go to the extent of prohibiting proof by parol of a verbal agreement to surrender, but only that such an agreement does not, *per se,* effect such surrender and a cancellation of the lease. * * * But the same authorities also hold, and it is elementary, in fact, that a verbal agreement to surrender, acted upon by an

actual surrender and acceptance, is sufficient to cancel the lease."

While a surrender of a lease by the lessee to his landlord is not effective *per se* unless in writing the surrender takes place under an oral agreement by operation of law where the landlord in pursuance of such an agreement takes possession of the demised premises or leases the same to another tenant who takes possession thereof. The agreement of Mr. Wilder to take the premises demised by the Brown lease, less the triangle in dispute, accepted by the lessors, as shown by the change of boundaries, so closely followed by the lease to the defendant, if not a surrender by operation of law, as contended by learned counsel for the defendant (see *Beall* v. *White,* 94 U. S. 382, 389), of the triangle in dispute, estopped the plaintiff's assignor from claiming the same. To permit an intending assignee of a lease to procure and enjoy the benefits of the necessary written consent of his lessor to the assignment to him in consideration of his promise to take only a portion of the demised premises and then repudiate such promise would be abhorrent to the principles of equity. While the facts are different from those in the case of *Goo Kim* v. *Holt,* 10 Haw. 653, the principle of estoppel there applied is applicable here. Under the facts established by the evidence, and found by the court, plaintiff's assignor was estopped from claiming the triangle in controversy. His assignee, the plaintiff, is in no better position than he was in, and, as the trial court correctly held, is estopped from claiming the triangle in controversy. Parol evidence is admissible to establish acts and declarations made by a party under such circumstances as will in equity estop him from denying such acts and declarations.

Robertson, C. J., concurring.

The exceptions are overruled. Costs awarded to the defendant-appellee.

*A. Lindsay, Jr.,* for plaintiff.

*Castle & Withington* for defendant.

CONCURRING OPINION OF ROBERTSON, C.J.

There was not an express surrender, and I think the evidence does not show a surrender by operation of law. Wilder did no act as tenant which was inconsistent with the continuance of the tenancy as to the whole lot. But Wilder's statement to Pratt to the effect that if Blackman and Pratt would consent to the assignment to him of the lease by Brown he would give up that portion of lot B lying westerly of the line D-E was equivalent to a representation that on that being done he would not thereafter make any claim to the strip beyond that line and that Blackman and Pratt could thereafter do what they pleased with it so far as he was concerned. The representation having been acted upon and the consent given, the case presents an equitable estoppel within the principle of *Goo Kim* v. *Holt,* 10 Haw. 653. True, Wilder at that time had no interest in the land, but he acquired an interest by the very transaction of which his representation formed a part. The estoppel affected Wilder's assignee, the plaintiff, and operated in favor of the assignee of Blackman and Pratt, the defendant. *Dickerson* v. *Colgrove,* 100 U. S. 578.