## BEALL *v.* WHITE.

1. Under the act of Congress approved Feb. 22, 1867 (14 Stat. 403), the lien of a landlord for rent has priority over a deed of trust made by his tenant after the commencement of the tenancy, whether the chattels covered by the deed were, when it was executed, upon the demised premises, or were subsequently acquired and placed by the tenant upon them.
2. A statutory lien attaching to personal chattels, although no possession of them be delivered, has the same operation and efficacy as existed at common law, where the possession accompanied and followed the deed creating the lien.
3. It is only where no rule of law is infringed, and the rights of third persons are not prejudiced, that courts of equity will, in certain cases, give effect to mortgages of subsequently acquired property.
4. A surrender to a landlord is effected either by words manifesting the intention of the lessee to yield up his estate, or by operation of law, where the parties, without such words, do some act which implies that they both agree to consider the surrender as made.
5. In this case, the court holds that there was no surrender, either express or by operation of law.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. Walter D. Davidge*, for the appellants.

*Mr. Enoch Totten*, contra.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Landlords leasing real property in this District have a tacit lien upon such of the personal chattels of the tenant upon the premises as are subject to execution for debt, commencing with the tenancy, and continuing for three months after the rent is due, and until the termination of any action for such rent brought within said three months. 14 Stat. 404 ; *Fowler* v. *Rapley*, 15 Wall. 328 ; *Webb* v. *Sharp*, 13 id. 14.

Sufficient appears to show that the executors of Alpheus Middleton, deceased, and Benjamin Beall, the owner of the other undivided half, on the 5th of March, 1867, leased the hotel at the corner of Pennsylvania Avenue and Sixth Street West, then known as the Clarendon Hotel, to George W. Bunker and William H. Crosby, for the term of five years from the first day of April next ensuing, at the yearly rent of $4,000, payable in monthly instalments the last day of each month, with the proviso, that if the rent, or any part thereof, shall be in arrear and unpaid for the space of thirty days, the tenancy, upon notice thereof being given in writing to the lessees, shall cease and determine, and the same shall be and become a tenancy at will, determinable as prescribed in the act of Congress.

Covenants were also contained in the lease by both parties. On the part of the lessees, for the payment of rent during the term and in the mode prescribed ; that they would not let or sublet the demised premises without the written consent of the lessors ; and for the peaceful surrender of the premises at the end of the term or additional term. Reciprocal covenants were also made by the lessors for quiet enjoyment, for the renewal of the lease for another term of five years, if the lessees made written application for the same within the period therein specified.

Under that instrument the lessees entered into possession of the premises, purchased necessary furniture, and commenced the business of hotel-keeping, the name of the house being changed to Bunker's Avenue Hotel. At the date of the lease, Thomas M. Plowman was a silent partner with the lessees in the business ; and it appears that Crosby, on the 2d of October in the following year, sold and assigned his interest

in the lease and furniture to Bunker and Plowman, his co-partners.

Negotiations took place for the enlargement of the hotel; and, in December following, an adjoining tenement belonging to Benjamin Beall, in his own right, was leased to Bunker & Plowman, at the yearly rent of $1,300, payable monthly, the same having previously been altered and remodelled for the purpose at great expense, and was then fitted up with the necessary furniture.

Five days after the commencement of the lease, to wit, April 6, in the same year, the lessees gave a deed of trust upon all the furniture then in the hotel to Orestes B. Dodge, trustee, to secure two notes of even date with the deed, each for $1,250, payable in nine and twelve months. When William H. Crosby sold and assigned his interest, Bunker & Plowman on the same day, to wit, Oct. 2, in the same year, gave a deed of trust to Samuel L. Phillips, trustee, upon all the furniture then in the hotel and all additions to the same, and all furniture to be placed in the Beall tenement, then being remodelled, and also upon the demised term and any further term the grantors may obtain in the Beall property, to secure two notes of even date, each for the sum of $3,500, payable in six and twelve months, in favor of William H. Crosby, for his interest in the lease and furniture.

Bunker & Plowman, on the 17th of April following, conveyed all their leasehold interest in the tenements, then called the St. James Hotel, together with all the furniture therein, to Samuel L. Phillips, trustee, to secure a continuing credit given by Beall & Baker to the grantors, in the amount of $5,000, to continue for two years. On the 20th of December in the same year the same grantors gave another deed of trust to Elias E. White, trustee, to secure a further indebtedness to Beall & Baker, in the sum of $3,044.77, as appears by the answer.

Two of the notes secured by the deeds of trust, each payable in twelve months, are claimed by the Freedman's Savings and Trust Company, one being secured in the first trust-deed and the other in the second, both notes having been taken by the bank when overdue. Mention should also be made that the

same grantors, on the 10th of April, two years later, assigned their leasehold interest and all the furniture in the hotel to John Spicer, and, late in the same month, put him in possession, the original lessors refusing to recognize him as tenant. Rent was subsequently paid, but was received and receipted as due from Bunker & Plowman.

Suits in attachment on two of the notes were brought for rent, on the 29th of August in the same year, and two other similar suits were instituted for similar causes, near the close of the year, in which chattels upon the premises, including both tenements, were seized, and judgments of condemnation were duly rendered.

Enough appears to show that Bunker & Plowman were indebted to Beall & Baker, under the deeds of trust executed for their benefit, in the sum of $10,000, and that it was at their instance that the trustees proceeded to enforce the deeds; that the property was sold by the trustees, under the several deeds of trust, with the consent of Spicer; and that the trustees then filed their bill of interpleader against Beall and Beall & Baker, and the Freedman's Savings and Trust Company, for the distribution of the fund.

Process was served, and the respondents appeared and filed an answer. Proofs were taken, the parties heard, and the court entered a decree that the deeds of trust are entitled to priority of satisfaction out of the fund in the hands of the complainants as against the rents to the landlord. Such being the final decree in the Court of Appeal, Beall & Baker, by special leave, appealed to this court, and assign for error the decree of the court below, adjudging that the deeds of trust are entitled to priority of payment as against the lien of the landlord.

Priority in favor of the first deed of trust cannot be claimed, unless the proposition of appellees can be sustained, that the first tenancy ended when William H. Crosby, with the consent of the lessors, sold and assigned his interest in the lease and furniture to Bunker & Plowman, or when the latter in turn assigned their leasehold interest in the demised premises and the furniture in the hotel to John Spicer. Suppose the original tenancy was unaffected by those events, it follows that the claim

in favor of the first deed of trust is unfounded, as the record shows that the tenancy commenced before the deed was executed, and the recitals in the deeds showed that the chattels were upon the premises.

Without more, these remarks are sufficient to show that the court below erred in that regard, if the original contract of lease continued in force unaffected by the described assignments. Grant that, and it follows that the decree under review is also erroneous in respect to the claim made in favor of the other deed of trust, for the same reason, that the tenancy commenced eighteen months before the deed was executed. Nor can the appellees derive any benefit from the fact that the deed purports also to convey chattels to be acquired in the future and placed in the hotel. Liens of the kind, arising under the act of Congress, attach at the commencement of the tenancy, or whenever personal chattels, owned by the tenant and subject to execution for debt, are brought on to the premises. Statutory liens have, without possession, the same operation and efficacy that existed in common-law liens where the possession was delivered. Personal chattels on the premises, sold in the ordinary course of trade, without knowledge of the lien, are not subject to its operation, or, in other words, the lien in respect to such sales, where the goods are removed from the premises, is displaced, and the purchaser takes a perfect title to the property discharged of the lien. *Webb* v. *Marshall*, 13 Wall. 15; *Grant* v. *Whitwell*, 9 Iowa, 153; *Doane* v. *Garretson*, 24 id. 351; *Marr* v. *Sheffner*, 2 East, 523; *Burton* v. *Smith*, 13 Pet. 483; *Fowler* v. *Rapley*, 15 Wall. 336.

Beyond question, the remarks made are sufficient to show that the lien of the landlord, so far as respects the chattels on the premises, is entitled to priority over the deeds of trust, unless the proposition of the appellees, that the statutory lien was displaced by one or both of the subsequent assignments by the lessees.

Before examining that question, it is proper to consider to what extent, if at all, the rights of the parties are affected by the terms of the second deed of trust, which purports to convey property subsequently acquired by the grantors and placed on the demised premises. Courts of equity will, in certain cases,

give effect to a mortgage of property to be acquired subsequently, where no rule of law is infringed and the rights of third persons are not prejudiced. *Pennock* v. *Coe*, 23 How. 12.

Grants or conveyances of the kind may, in certain cases, be valid, subject to those conditions, or, to speak more accurately, the law will permit the grant or conveyance to take effect upon the property when it is brought into existence and belongs to the grantor, in fulfilment of an express agreement, if founded on a good consideration, and it appears that no rule of law is infringed and the rights of third persons are not prejudiced. Story, Eq. Jur. (9th ed.) § 1040; *Dunham* v. *Railway Company*, 1 Wall. 254; *United States* v. *New Orleans Railroad*, 12 id. 362.

Decided cases may be found where the rule, as stated in the preceding citations, is greatly qualified, and others where it is expressly denied, if applied in the ordinary business transactions. *Otis* v. *Sill*, 9 Barb. 111; *Mogg* v. *Baker*, 3 M. & W. 198; *Winslow* v. *Insurance Company*, 4 Met. 316; *Jones* v. *Richardson*, 10 id. 481; *Lunt* v. *Thornton*, 1 Man., Gr. & Sc. 385.

Were it necessary to reconcile the decisions upon the subject, the effort would be involved in difficulty; but it is not necessary to make the attempt in this case, as the court is unhesitatingly of the opinion that the deeds of trust in that regard present no legal obstacle to the claim of the appellants.

Repeated decisions have settled the rule that the lien of the landlord attaches at the commencement of the tenancy, or whenever personal chattels, owned by the tenant and subject to execution for debt, are placed on the demised premises. *Fowler* v. *Rapley*, 15 Wall. 328; *Webb* v. *Sharp*, 13 id. 14.

Decided cases everywhere admit that rule; and yet the second deed of trust in question provided that the grantee should take not only all the chattels on the premises at the date of the instrument, but also all such as the tenants might have on the premises in substitution, renewal, or addition to those contained therein, and all they might have during the continuance of the term in and about the addition which was then erecting to the hotel, and which was not leased to the tenants in possession under the lease until the month of December, 1868, as appears both by the bill of complaint and the answer. Suffice it to say

that the terms of the deed of trust are in that regard utterly inconsistent with the statutory rights of the landlord, and must give place to the superior claim of the appellants.

Concede all that, and still it is insisted by the appellees that the statutory lien for rent has been lost, because it was not seasonably enforced; and they assign two reasons for the conclusion: 1. That the first term ended and the second began when William H. Crosby retired and Plowman was substituted in his place, with the consent of the lessors. 2. That the second term ended when Bunker & Plowman in their turn left the premises, and that the third term commenced when Spicer, with the approbation of the lessors, entered into possession of the hotel and became its proprietor.

Changes of the kind were made; and the appellees submit the proposition that each one of the same effected by operation of law a surrender of the previous term, and created both a new tenancy and a new term. Two things which are unlike should be separately considered; and for that reason the alleged surrenders of the term will be separately examined.

Both the pleadings and evidence show that Plowman, though not named in the original lease, was, in fact, a silent partner, and that he was interested in the contract; and the evidence also shows that the arrangement that Crosby should retire and that Plowman should take his place was a matter which the parties adjusted between themselves, doubtless with the consent of the senior partner named in the lease. All three were originally interested, each having a third interest; and the reasonable inference from the evidence is, that the other two, when Crosby retired, became joint owners of the entire interest conveyed by the lease. Evidence to show that the lessors, other than Benjamin Beall, were ever consulted is entirely wanting; and there is neither fact nor circumstance in the case to show that the parties, or any one of them, ever for a moment supposed that the term was surrendered, or that a new term was created by the transaction. *Whitney* v. *Myers*, 1 Duer, 266.

No new writings were executed, nor was any change made in the management of the property, except that one party interested retired, and another, who had an equal interest in the adventure, joined with the senior partner in conducting the

business, and contributed his proportion of the means to pay the past and accruing rent. 1 Washb. Real Prop. (4th ed.) 549.

Rent was subsequently paid by the tenant in possession; but there is no evidence in the case which has the least tendency to show that there was any surrender in fact of the term, or that any one of the parties ever had any such intention. *Lyon* v. *Reed*, 13 M. & W. 285. Indeed, it is not even suggested that there was any surrender in fact.

What the appellees suggest is, that these acts of the parties, proved, constitute a surrender by operation of law, even though such was not their intention. Such a conclusion may, in certain cases, arise by operation of law, as where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate continued to exist.

Text-writers agree that a surrender is the yielding up the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. It is either in express words, by which the lessee manifests his intention of yielding up his interest in the premises, or by operation of law, when the parties without express surrender do some act which implies that they have both agreed to consider the surrender as made. Taylor on Land. & Ten. (6th ed.) 392; Woodfall on Land. & Ten. (9th ed.) 267.

Decided cases to the same effect are very numerous, and they show that the evidence in this case is not sufficient to warrant the conclusion that there was any surrender of the term when Crosby retired and Plowman took his place. *Schieffelen* v. *Carpenter*, 15 Wend. 404; *Field* v. *Mills*, 33 N. J. 259; *Boardman* v. *Wilson*, Law Rep. 4 C. B. 57; *Bedford* v. *Terhune*, 30 N. Y. 458.

Attempt is next made to maintain the proposition that the term under the original lease terminated when Bunker and Plowman assigned or agreed to assign all their interest in the lease and furniture of the hotel to John Spicer, as alleged in the answer.

Satisfactory proof is exhibited that they agreed to make the

assignment, and it is certain that he went into possession of the premises as proprietor; and the theory of the appellees is, that Benjamin Beall assented to the transfer of the lease and the personal chattels, and that he agreed to accept the assignee as tenant of the demised premises. Testimony to that effect was given by several witnesses examined by the appellees, as exhibited in the record.

Opposed to that is the testimony of Benjamin Beall, who was called and examined in behalf of the appellants. He testifies that he never consented to the substitution. Instead of that, his testimony is that he peremptorily refused to recognize Spicer as tenant when he called upon him and made request to that effect; that the interview was before any assignment had been completed with the tenants in possession, and that he then informed Spicer that he would give him the benefit of an extension of the lease.

Full proof is also exhibited in the record that the owners of the hotel and furniture, on the 28th of April, 1871, gave written notice to the lessees in possession that they would, on the following day, take possession of the furniture and fixtures of the hotel, and that the marshal had been directed to attach the same. From that notice it also appears that they referred to a statement in a morning paper, that the hotel had changed hands, and stated that the change was not authorized by them, and that they would not sanction any such arrangement.

Nothing is wanted to show that the lessees knew that the acting lessor would not consent to any surrender of the term. Rent, it is admitted, was subsequently paid to him by Spicer; but the evidence shows that he receipted for it to the lessees who made the assignment, but without his consent. *Amory* v. *Kannoffsky*, 117 Mass. 354.

Taken as a whole, the evidence satisfies the court that there was no actual surrender of the term, and that the acts of the lessors, when properly understood, do not tend to prove the theory of the appellees, that there was any surrender by operation of law, within the meaning of that phrase as expounded by the decided cases. *Phené* v. *Popplewall*, 12 C. B. N. s. 334.

Evidence to support such a theory, so far as respects all of

the owners of the property and furniture, except one, is entirely wanting, as no application was ever made to any other one of the owners to give their consent to the arrangement, nor was any evidence introduced to show that they had knowledge that any thing of the kind was proposed.

Sufficient appears to show not only that Beall knew what the proposal was, but that he also knew what the parties, as between themselves, carried into effect. Much conflict exists in the evidence as to whether he consented to it or not; but, in view of the written notice given to the lessees before the change of proprietors was carried into effect, the better opinion is, that the change was made without having secured his consent.

*Decree reversed, and cause remanded with directions to enter a decree, adjudging that the liens of the landlord have priority over the deeds of trust.*