**DISTRICT OF COLUMBIA, Appellant,**

v.

**Patrina SUYDAM, Appellee.**

**No. 90–517.**

District of Columbia Court of Appeals.

Argued Feb. 14, 1991.
Decided May 24, 1991.

Donna M. Murasky, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellant.

Sarah Rosenson, Supervising Atty., with whom Ann Marie Hay, Executive Director, D.C. Law Students in Court, and Michaela M. Barry, Student Atty., were on the brief, for appellee.

Before BELSON, FARRELL, and WAGNER, Associate Judges.

FARRELL, Associate Judge:

After defendant-appellee and her husband, occupants of a publicly-subsidized housing unit, ceased paying rent, the Dis-

trict of Columbia government (the District) served them with a statutory notice to vacate. Defendant then informed the District that her husband had left the premises and, as required by regulations, signed a new lease for the unit listing her as the sole head of household and reducing the rent, but otherwise leaving the terms of the previous lease unchanged. Defendant contends that by executing the new lease, the District relinquished its right to seek her eviction for nonpayment of rent under the previous lease. The trial court agreed. We reverse and hold that, in the circumstances of this case, execution of the new lease by the parties did not constitute a "surrender" of the existing tenancy so as to bar the District's action to evict for failure to pay rent.

## I.

The District of Columbia provides a limited amount of subsidized public housing to residents unable to afford housing at market prices. Tenants who qualify for such housing pay rent based on their income, not on the value of the housing. To ensure that the rent charged is proper, there is an annual evaluation of the financial circumstances of tenants. Moreover, the law imposes on tenants the "responsibility to report to HMA [the Housing Management Administration] any change in family circumstances, including changes in family size or income, as soon as the change occurs." 14 DCMR § 6113.1 (1989). And, in certain circumstances, the District is required to execute a new lease with a tenant. 14 DCMR § 6205.8 provides in part that "[a] new dwelling lease shall be issued within thirty (30) days whenever ... [t]he status of the head of household is altered by ... separation."

Effective February 1, 1985, defendant and her husband signed a lease with the District for a three-bedroom dwelling at 46 57th Street, S.E., and moved into the property with their three children. The lease provided for a month-to-month tenancy and listed the husband as head of the household, although in ensuing applications for continued occupancy (in 1987 and 1988) defendant listed herself as the head of household. The 1985 lease mirrored the regulation quoted above by requiring that defendant notify the District of all changes in income, employment, or composition of the family.

As required, the family's financial circumstances were reviewed periodically to ensure that the monthly rental charges were at a level consonant with family income. From 1985 through March, 1989, the monthly rental charges ranged from $249.00 to $84.00, depending partly on defendant's income from work and unemployment compensation and partly on the level of public assistance the family received. The husband apparently was never employed during this time.

According to the District, on or about August 1, 1987, the defendant and her husband stopped paying rent. Approximately sixteen months later, on December 21, 1988, the District served them with a notice to vacate the unit, explaining that they were required to move out by February 1, 1989, for nonpayment of rent.

On February 28, 1989, the District's housing agency received from defendant a note and application for continued occupancy in which she stated that her husband had moved out in January.[1] As a result of this notice, on April 1, 1989, the Housing Management Administration issued a new lease for the same dwelling pursuant to 14 DCMR § 6205.8. The lease was signed by defendant alone as tenant, and the terms were virtually identical to those of the earlier lease except that the monthly rent was reduced from $135.00 to $79.00 per month.

In July, 1989, the Office of the Corporation Counsel filed an action on behalf of the District against defendant and her husband, seeking possession of their dwelling for nonpayment of rent for nearly a two-year period. After answering the complaint, defendant filed a motion for partial summary judgment in which she admitted that the District, in a civil action, could recover for unpaid rent pursuant to the

1. The note mistakenly said January of 1988, but apparently meant January of 1989.

1985 lease, but argued that an action for possession could not be based on a failure to pay rent under the 1985 lease. The judge agreed and granted the motion, citing *Schwartz v. Brown*, 64 A.2d 298 (D.C. 1949), and *Belanger v. Rice*, 2 Utah 2d 250, 272 P.2d 173 (1954), for the proposition that the 1989 lease had extinguished the tenancy established between defendant and the District in 1985. Following this ruling, defendant filed a motion to dismiss the suit for possession, which the trial court granted upon the District's apparent concession that defendant was not in arrears with respect to post-April 1, 1989, payments. The District brought this appeal.

II.

■■ Relying on the general principle of landlord and tenant law "that the making of a new lease operates as a surrender of an older one," *Schwartz v. Brown*, 64 A.2d at 299, the trial court ruled that the District could not sue defendant for possession based upon her nonpayment of rent under the 1985 lease. We think the court misconceived the application of that principle to the execution of the new lease in this case under the District's public housing scheme.

> [A] surrender [of a leasehold estate] is the yielding up the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. It is either in express words[ ] by which the lessee manifests his intention of yielding up his interest in the premises, or by operation of law, when the parties without express surrender do some act which implies that they have both agreed to consider the surrender as made.

*Beall v. White*, 94 U.S. 382, 389, 24 L.Ed. 173 (1876). *See* H. TIFFANY, THE LAW OF REAL PROPERTY §§ 960–65 (3d ed. 1975). Surrender by operation of law occurs, for example, when the tenant gives up the property and the landlord accepts the "surrender of the lease." *Belanger v. Rice*, 2 Utah 2d at 252–54, 272 P.2d at 175. *See Smith's Transfer & Storage Co. v. Hawkins*, 50 A.2d 267, 268 (D.C.1946). The

execution of a new lease or the modification of an existing one may constitute a "surrender" and termination of an existing lease if these actions manifest the parties' intent to terminate the former tenancy. *Schwartz v. Brown*, 64 A.2d at 299; *Burger v. Western Sand & Gravel Co.*, 237 S.W.2d 725, 729 (Tex.Civ.App.1950). But "[t]he intention of the parties is the test," and not every

> modification in a contract of lease … constitute[s] a new lease and operate[s] as a surrender. To make it a surrender by operation of law the second lease must be, in all its essentials, a complete and operative lease, because no implication arises, unless one perfect lease is substituted by another *and the existence of the last is inconsistent with that of the first.*

3A J. GRIMES, THOMPSON ON REAL PROPERTY § 1347, at 657 (1981 repl.) (emphasis added). As the Court of Appeals of Maryland stated after exhaustively reviewing the authorities:

> [W]here the first lease is not so *inconsistent and incompatible* with the second lease entered into between the same parties for the same term, or part thereof, for the same property, that the two cannot operate together, then the first lease is not rendered null and void, but still subsists, and the second lease is but a modification of the first lease; and in such a case the question of intention is material and relevant. …

*Stedman v. Hill*, 195 Md. 568, 581, 74 A.2d 41, 47 (1950) (emphasis added).

■■ The 1985 lease in this case was between defendant and her husband, on one hand, and the District of Columbia on the other, whereas the 1989 lease was between defendant alone and the District. Defendant argues that this change, giving her now "the right to the exclusive use and occupancy of the leased premises" (paragraph 7(a) of the lease), was sufficient to work a surrender of the former tenancy. We disagree. Except for this change and a reduction in rent, the 1989 lease, executed for the same dwelling, carries forward nearly verbatim the detailed rights and ob-

ligations of both landlord and tenant prescribed in the 1985 lease. Defendant has pointed to no inconsistency between the two sufficient to affect the District's right to require payment of arrearages under the former lease. Moreover, when we consider the regulatory background against which the new lease was issued, it becomes impossible to hold that the 1989 lease constituted a surrender of the existing tenancy instead of a continuation of it on amended terms.

As previously noted, the parties executed the 1989 lease pursuant to 14 DCMR § 6205.8(a), which requires issuance of a "new dwelling lease" whenever the "status of the head of household is altered by marriage, death, separation, reconciliation, or any other change; Provided, that the change does not affect the eligibility of the family." Because the District's low income housing program is federally funded, this regulation "[r]eflect[s] the requirements of Federal law as detailed by HUD in the Code of Federal Regulations." 14 DCMR § 6000.4. The federal regulations provide that public housing agencies [PHA] must enter into leases with individual tenants, and the regulations mandate certain lease provisions. 24 C.F.R. § 966.4 (1990). *See* 14 DCMR Ch. 62. One such provision is that "[t]he names of the parties to the leases and the identification of the premises leased shall be set forth, including: ... (2) The members of the household who will reside in the unit." 24 C.F.R. § 966.4(a)(2). The purpose of this requirement is, "among other things, to enable the PHA to ascertain family composition for purposes of determining the appropriate rent and size of dwelling." 40 Fed.Reg. 33402 (1975). To implement the federal regulation, the District's regulations provide for (1) mutual "changes" to the dwelling lease when there is an addition to the family (other than an addition as a head of household) as a result of birth or by operation of law, 14 DCMR §§ 6205.5, 6205.6(c); (2) unilateral changes to the lease by HMA reflecting non-head of household family subtractions such as de-

partures or deaths, 14 DCMR § 6205.6(c); and (3) issuance of a "new dwelling lease" when the status of the head of household changes, 14 DCMR § 6205.8(a).[2] To assist in these mandatory changes, tenants are required by regulation, 14 DCMR § 6113.1, and their individual leases to notify the agency of any change in family circumstances, including size and income, so that adjustments in rent and size of dwelling can be made.

From this overview it is evident that the purpose of the "new dwelling lease" requirement is not to terminate an existing tenancy but to continue it on terms consistent with the goals of the public housing program. Indeed, under federal law, leases used in the program shall "require that the public housing agency may *not* terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause." 42 U.S.C. § 1437d(*l*)(4) (1988) (emphasis added). Given this regulatory background, specifically the duty both of the tenant to report changes in the household and of the District to amend the lease or issue a new one accordingly, it would make no sense to hold that defendant and the District intended a surrender or extinction of the existing tenancy when they signed the 1989 lease. Instead they modified the landlord and tenant relationship as required by law. It follows that by executing the new lease defendant was not relieved of the obligation for past rent as a condition of continuing to occupy the premises.

Further indication that the parties understood defendant's liability for delinquent rent to be carried forward in the new lease is provided by the 1989 lease itself. Paragraph 6(e) of the lease states in part: "If this lease is an extension of occupancy by the Tenant under prior lease or leases with the Administration, any such amount due under the prior lease or leases may be charged and collected *as if the same had occurred hereunder*" (emphasis added). Defendant argues that the phrase "any

2. Under 14 DCMR § 6205.8(b), a new dwelling lease also must be issued "[w]hen a family is

transferred from (1) dwelling unit to another."

such amount" refers strictly to the situation dealt with in the immediately preceding sentence, *i.e.*, the tenant's intentional or mistaken failure "to submit to the Administration any facts used in the determination of rent," and the Administration's corresponding right to charge and collect as rent the difference between the rent actually paid and that owing had proper information been submitted. Defendant may be correct that the provision deals specifically with underpaid (because undercharged) rent, but we think it fairly can be read more broadly as reflecting the parties' understanding that past deficiencies in rent payment are obligations of tenancy under the new lease. Indeed, it seems fanciful to conclude that the District, at pains to preserve its right to recoup underpaid rent under past leases, did not also intend to treat past delinquency—a failure to pay at all—as an obligation carried forward in the present lease, "as if the same had occurred hereunder." *See also* 14 DCMR § 6205.13 ("Tenants who execute a new dwelling lease ... shall remain liable for any delinquent rent or other charges relating to the prior lease").

We hold, therefore, that the District did not forfeit its right as landlord to seek dispossession of the tenant for nonpayment of rent merely by issuing her a new lease. Both the lease itself and, more importantly, the regulatory scheme under which it was issued [3] belie any intent of the parties to nullify the existing tenancy by executing the new agreement. The court erred in entering judgment against the District on the ground that the tenancy had been surrendered.

*Judgment reversed and case remanded.*

---

**3.** The Supreme Court has recently reminded us of the settled rule that "[l]aws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms." *Norfolk & Western Railway Co. v. American Train Dispatchers,* — U.S. —, 111 S.Ct. 1156, 1164, 113 L.Ed.2d 95 (1991) (citation omitted).