**DISTRICT OF COLUMBIA, Appellant,**

v.

**Latisha REID, Appellee.**

Nos. 92–CV–1479, 93–CV–308 and 93–CV–375.

District of Columbia Court of Appeals.

Argued Nov. 14, 1995.

Decided Dec. 18, 1995.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Washington, DC, Deputy Corporation Counsel, were on the brief, for appellant.

Carol J. Bettencourt, West Bridgewater, MA, for appellee.

Before FERREN and REID, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

The District of Columbia, as landlord for subsidized public housing, brought an action against one of its tenants, appellee Latisha Reid, for possession of her dwelling unit at 2220 Bryan Place, S.E. The basis for this action was nonpayment of rent under the lease for the Bryan Place unit, coupled with rent arrearages under an earlier lease for public housing at 755 Yuma Street, S.E. where Reid previously resided. The Housing Management Administration (HMA) had transferred Reid's residence to Bryan Place in order to permit renovation of the Yuma Street unit. Because the Bryan Place lease did not have a "special supplement" that expressly carried over the balance due under the Yuma Street lease, *see* 14 DCMR § 6205.14 (1991), the trial court granted partial summary judgment for Reid on the possessory action based on rent due under the Yuma Street lease. On appeal, the District contends that *Thornton v. District of Columbia*, 647 A.2d 385 (D.C.1994)—a case decided after the trial court ruled here—requires reversal. We held in *Thornton* that the District was entitled to possession of a public housing unit based on nonpayment of rent for another unit from which the tenant had transferred. *See id.* at 387–88. Because the dispositive facts in *Thornton* are identical to the salient facts here, and because *Thornton* binds this division of the court, *see M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), we must conclude the trial court erred in granting partial summary judgment for the tenant. We therefore reverse and remand for further proceedings.

## I.

On October 16, 1989, Reid entered into a standard-form lease agreement with the District's Housing Management Administration, a branch of the Department of Public and Assisted Housing, for the Yuma Street unit, which Reid's mother had been renting since

1977. Reid's lease included an addendum in which she agreed to assume responsibility for $8,758.04 in rent arrearages which had accrued during the period of her mother's Yuma Street tenancy.

Soon thereafter, the HMA asked Reid to vacate Yuma Street because of the need for substantial repairs. The District's "Notice of Lease Termination" indicated that an arrearage of $8,681.50 remained under the Yuma Street lease and further noted that Reid would be transferred to Bryan Place. On October 22, 1989, Reid vacated the Yuma Street premises and, the next day, signed a standard-form lease for the Bryan Place unit. The lease was the same as the one used for Yuma Street except that, unlike the Yuma Street lease, the lease for Bryan Place did not have an addendum that expressly reflected the outstanding rent due on the earlier lease.

More than two years later, on January 29, 1992, the HMA served Reid with a "Notice to Vacate" her Bryan Place residence for nonpayment of rent. Thereafter, on March 23, 1992, the District filed an action for possession alleging that Reid owed the District $10,209.86 for the period from December 1, 1984 to March 31, 1992.[1] Reid moved for summary judgment on July 24, 1992, contending that the parties had "inten[ded] to surrender and terminate the earlier [Yuma Street] lease" upon signing the Bryan Place lease, and that a possessory action based on rent arrearages under the Yuma Street lease was accordingly barred. To support its action for possession based on Reid's liability for arrearages under the first lease, the District, in opposing summary judgment, relied on three authorities: (1) paragraph 6(e) of the standard-form lease; (2) three municipal regulations, 14 DCMR §§ 6205.8(b), 6205.13, and 6205.14 (1991); and (3) this court's decision in *District of Columbia v. Suydam*, 591 A.2d 856 (D.C.1991), where we held that a public housing tenant's execution of a new lease for her apartment, in order to reflect a change in head of household, did not preclude an action for possession based on nonpayment of rent under her previous lease for the same apartment.

The trial court granted partial summary judgment for Reid on August 17, 1992, agreeing with Reid that the District could not bring a possessory action based on the Yuma Street lease because, in the court's view, the Bryan Place tenancy was not an extension of the Yuma Street tenancy. Instead, according to the trial court, Bryan Place was an altogether new tenancy created upon surrender of the Yuma Street lease. The court, however, noted that its ruling did not preclude a civil action for damages (or debt due) for the delinquent rent.[2]

1. Theoretically, the HMA could have sued for possession based on nonpayment of rent for the Bryan Place apartment alone, without regard to arrearages under the Yuma Street lease, and thereby avoided the central question presented by this appeal—assuming, of course, that the HMA could have proved that at least some incontestable rent was overdue for Bryan Place. *See Winchester Management Corp. v. Staten*, 361 A.2d 187, 191 n. 13 (D.C.1976) (citing *Tutt v. Doby*, 148 U.S.App.D.C. 171, 174–75, 459 F.2d 1195, 1198–99 (1972)). According to the Joint Pretrial Statement, however, Reid interposed a defense alleging a breach of the implied warranty of habitability based on housing code violations at Bryan Place. *See Curry v. Dunbar House, Inc.*, 362 A.2d 686, 689 (D.C.1976); *Javins v. First Nat'l Realty Corp.*, 138 U.S.App.D.C. 369, 380–81, 428 F.2d 1071, 1082–83, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). If successful, that defense would have prevented the District's early repossession of the premises. Reid, however, did not allege code violations at Yuma Street; her only defense to that nonpayment claim was her contention that the Yuma Street lease had been surrendered and thus terminated as a matter of law upon execution of the Bryan Place lease. Apparently, therefore, the District relied primarily on alleged nonpayment under the Yuma Street lease as the only likely basis for obtaining summary possession—assuming Reid's defense to that particular claim failed as a matter of law. Appellant has not argued that code violations at Bryan Place can serve as a defense to eviction from that present abode when the HMA seeks repossession based on nonpayment of rent under the prior Yuma Street lease—an argument that would have to be premised on the theory that, if the Bryan Place lease is an extension of the Yuma Street lease (as the District maintains), then breach of the warranty of habitability at Bryan Place constitutes a breach at Yuma Street as well.

2. In concluding that the District could not seek possession of the Bryan Place unit based on nonpayment of rent under the Yuma Street lease, the trial court did not address whether a possessory action could be brought for nonpayment of rent under the Bryan Place lease because that

## II.

We review the trial court's ruling in light of *Thornton,* a possessory action against public housing tenants based partly on nonpayment of rent under leases for dwelling units where the tenants had lived before transferring to their present units, in order to permit renovation of their former units. In *Thornton,* the tenants defended on the ground that execution of leases for their new apartments terminated the leases for their previous apartments and thus prevented an action for possession based upon failure to pay rent under the earlier lease. We rejected this argument by applying *Suydam,* where we declined to apply to public housing the common law rule that a new lease for particular premises operates as a surrender of an older one. *See, e.g., Schwartz v. Brown,* 64 A.2d 298, 299 (D.C.1949). We had noted in *Suydam,* in particular, that when municipal regulations require a new lease to reflect a change in head of household, *see* 14 DCMR § 6205.8(a) (1991) (new lease required whenever head of household altered by marriage, death, separation, reconciliation, or other change), it "would make no sense to hold that [the tenant] and the District intended a surrender or extinction of the existing tenancy when they signed the [new] lease." *Suydam,* 591 A.2d at 859.

In *Thornton,* we saw no legal basis for saying that a transfer from one unit to another, when required by municipal regulation, *see* 14 DCMR § 6205.8(b) (1991), presents a situation any different from the one in *Suydam,* where the tenant executed a new lease for the same apartment. In either case, the new lease extends an existing tenancy rather than terminating it. *See Thornton,* 647 A.2d at 388. We regarded as immaterial the fact that two separate housing units were involved in *Thornton* whereas only one was involved in *Suydam;* we focused instead upon the language in the standard-form lease and in the applicable municipal regulations, as we had in *Suydam. See Thornton,* 647 A.2d at 388; *Suydam,* 591 A.2d at 859–60. We relied in *Thornton,* as in *Suydam,* on language in paragraph 6(e) of the second, standard-form lease:

> If this lease is an extension of occupancy by the Tenant under prior lease or leases with the [Housing Management] Administration, any such amount due under the prior lease or leases may be charged and collected as if the same had occurred hereunder.[3]

*Thornton,* 647 A.2d at 386. We also cited language from two municipal regulations: 14 DCMR §§ 6205.13 and 6205.14. *See Thornton,* 647 A.2d at 386, 388. The first regulation, § 6205.13, provides:

> Tenants who execute a new dwelling lease as a result of transfer from one (1) unit to another, or as a result of any other requirement for a new lease, shall remain liable for any delinquent rent or other charges relating to the prior lease.

According to § 6205.14, under the second regulation:

> The HMA may unilaterally execute a special supplement to the new lease which assesses the amount due under the old lease against the new lease.

issue was not presented in the summary judgment motion. The court declined to decide whether a possessory action could be brought for nonpayment of charges other than rent, such as late fees, because the District's complaint predicated repossession only upon Reid's nonpayment of rent.

The parties later partially settled the case, although the District expressly reserved its right to appeal the trial court's August 17, 1992 ruling. After the Clerk of the Landlord and Tenant Branch had entered the settlement on the case jacket on October 29, 1992, the District noted three separate appeals of that trial court ruling. On May 18, 1993, we granted the District's motion to consolidate the three appeals. We also granted the District's motion to stay briefing pending a decision in *Thornton,* which presented similar issues.

3. The *Thornton* court quoted only the portion of paragraph 6(e) containing language that allows the District to carry over rent arrearages from one lease to another. *See id.* 647 A.2d at 386, 388. Tenant-appellee points out that the quoted language is contained in a paragraph that provides for recomputation of rent because of a mistake or intentional misrepresentation of fact which the District had relied on for calculation of the rental subsidy. The *Thornton* court, however, gave independent weight to the quoted language, without limitation to recomputations.

In permitting a possessory action based on rent arrears under the original lease, *Thornton* compels reversal here for three reasons: (1) The District, as in *Thornton*, executed a new lease with Reid for Bryan Place pursuant to municipal regulation § 6205.8(b) after the transfer from Yuma Street; (2) The Bryan Place lease has the same standard-form lease used in *Thornton*, containing paragraph 6(e), and thus preserves the District's right to possession for unpaid rent in the previous, Yuma Street lease; and (3) the same municipal regulations apply.

Reid contends, however, that the District's failure to comply with regulation § 6205.14 created a material difference that distinguishes this case from *Thornton*. Specifically, the District failed to attach a "special supplement," or addendum, that "assesses the amount due under the old [Yuma Street] lease against the new [Bryan Place] lease" pursuant to § 6205.14. Reid argues that § 6205.14 implies arrearages can be carried over from a previous public housing lease only if the HMA attaches a "special supplement" to the new lease. Reid therefore urges us to conclude that the omission of a separate supplement therefore evidences a mutual intent to surrender the Yuma Street lease (and all claims arising out of that lease), rather than to extend the tenancy subject to § 6205.13.

Although the significance that Reid attributes to the absence of a "special supplement" is not implausible, we are bound by *Thornton* to reject it.[4] Reid overstates the importance of municipal regulation § 6205.14. The *Thornton* court essentially premised its opinion on paragraph 6(e) of the standard-form lease and on § 6205.13 of the municipal regulations. As we stated in *Thornton*, referring to *Suydam:*

> We found confirmation ... of the District's right to seek dispossession for failure to pay rent under the former lease, both in the lease provision itself which made the arrearage a present obligation "as if the same had occurred [under the new lease]," and in 14 DCMR § 6205.13, which preserves the liability for delinquent rent of tenants who execute a new dwelling lease. *Id.* at 859–60; *see also* 14 DCMR § 6205.14 (District's execution of a "special supplement to the new lease ... assesses the amount due under the old lease against the new lease.")

*Thornton*, 647 A.2d at 387–88 (footnote omitted). Although this paragraph includes a "see also" citation to § 6205.14, and Part III of *Thornton* discusses the District's authority to attach the "special supplement" identified in § 6205.14, that citation and discussion serve only to reinforce the court's conclusion in Part II—premised entirely on paragraph 6(e) of the standard-form lease, on municipal regulation § 6205.13, and on *Suydam*—that, upon the tenant's transfer to a new unit, rent due on the previous unit carries over. We cannot read *Thornton* in a way that leaves room for Reid's argument that § 6205.14 plays a critical legal role.

We conclude, accordingly, that § 6205.13 mandates a carryover rental obligation when there is a required transfer from one public housing unit to another, and that § 6205.14 must be construed to permit—but not require—the District to supply an addendum spelling out the rent arrearages carried over. This conclusion is based on the plain language of § 6205.14: "The HMA may unilaterally"—not mutually—"execute a separate supplement...." The better practice, of course, is to provide the supplement, as was done in *Thornton*, so that the tenant will know exactly what obligation the District has in mind. But the supplement is not essential to a tenant's obligation under the lease and § 6205.13.[5]

This case illustrates why omission of a § 6205.14 supplement will not necessarily

---

4. Both parties have acknowledged that the District's municipal regulations are binding upon its public housing tenants, even though none of the provisions of the standard-form lease expressly incorporates these regulations into that lease.

5. Reid acknowledges that, after a transfer from one public housing unit to another, regulation § 6205.13 can serve as the basis for an action for rent arrearages; she contends only that a possessory action depends, in addition, on compliance with § 6205.14. *Thornton*, however, rejected that argument. *See Thornton*, 647 A.2d at 388–89.

cause prejudice. The parties here were aware of Reid's outstanding arrearages under the Yuma Street lease on October 16, 1989, the date the Yuma Street lease was executed, because of the addendum attached to the Yuma Street lease. Reid was transferred to Bryan Place only a week later, on October 23. Without doubt, therefore, Reid was aware of the information that a "special supplement" to the new lease, containing essentially the same information, would have provided at the time that lease was executed.

Finally, we are not persuaded by any of Reid's other proffered reasons for surrender/termination of the Yuma Street lease upon her transfer to Bryan Place. The fact that the standard-form lease permitted the District literally to "terminate" Reid's Yuma Street lease because of needed repairs, or that the District sent a "Notice of Lease Termination" upon Reid's transfer from Yuma Street to Bryan Place, is not significant for purposes of our analysis. To repeat: the *Thornton* court made clear that termination of a lease, as such, does not necessarily terminate a public housing tenancy. *See Thornton,* 647 A.2d at 387–88. *Thornton,*

accordingly, established that a rental arrangement for public housing is not limited to a particular housing unit but encompasses any such unit to which the tenant is lawfully transferred, even though the transfer requires a new lease. As a consequence, the original tenancy is extended by transfer, albeit through a new lease, with the result that rent arrearages attributable to the first dwelling unit carry over to the second as a matter of law.

\*     \*     \*

For the foregoing reasons, we reverse the trial court's ruling (made before *Thornton* was decided) and reinstate the District's possessory action based upon rent arrearages under the lease for the Yuma Street property.

*So ordered.*